# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.H., et al.,<br>    Plaintiffs,<br><br>        v.<br><br>AHMAD KHALIFA, M.D., et al.,<br>    Defendants. | 2:22-cv-07148-DSF-PVCx<br><br>Order DENYING Motion to Remand (Dkt. 47) |

    The United States (the government) has moved to remand this action. The government argues that the removing defendants, Ahmad Khalifa, M.D., Borzouyeh Poursharif, M.D., and Eisner Pediatric and Family Medical Center (Eisner Defendants) are not entitled to coverage under 42 U.S.C. § 233(a) because the incidents at issue in this case arise out of work that the Eisner Defendants did on behalf of a non-covered third-party. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. FACTUAL BACKGROUND

    None of the background facts relevant to this motion appear to be disputed. This is a medical malpractice action arising from the allegedly negligent delivery of A.H., which resulted in serious, permanent injuries to A.H. as well as injuries to A.H.'s mother, Sandra Guzman. The delivery occurred at California Hospital Medical Center (the Hospital), but direct physician services were provided by Eisner employees Drs. Khalifa and Poursharif. Compl. ¶ 2. Plaintiffs' complaint alleges – and no one appears to dispute – that Guzman and,

by extension, A.H., were preexisting prenatal OB/GYN patients of Eisner in its outpatient clinic.  Compl. ¶ 1.  Separately, the Eisner Defendants provided OB/GYN services at the Hospital pursuant to a contract between Eisner and the Hospital.  Chapman Decl., Ex. A (Contract).  This contract covered care of both preexisting Eisner patients as well as certain other patients who presented for OB/GYN services at the Hospital.  Contract ¶ 2.1.  At the time of the alleged malpractice, Guzman had been admitted as a patient at the Hospital.  See Compl. ¶ 2.

## II. ANALYSIS

There is no dispute that Eisner is a private community health center that has been deemed to be treated as a Public Health Service employee for the purposes of 42 U.S.C. § 233.  This "deeming" also generally covers Eisner employees such as Khalifa and Poursharif.  "Deeming" of a private entity or individual applies "with respect to services provided . . . to all patients of the entity."  42 U.S.C. § 233(g)(1)(B).  When a claim for damages due to personal injury from medical services is made against such deemed entities or individuals "while acting within the scope of [their] office or employment," the claim can proceed only against the United States under the Federal Tort Claims Act.  42 U.S.C. § 233(a).  However, deeming only applies in specific cases if the services were provided to either a patient of the deemed entity or to non-patients in certain circumstances after approval by the Secretary of Health and Human Services.  42 U.S.C. § 233(g)(1)(B).

The government does not appear to dispute that the medical services that form the basis of Plaintiffs' case were provided by the Eisner Defendants to a preexisting Eisner patient who had received prenatal care at an Eisner outpatient clinic.  The government also does not appear to dispute that, absent the Eisner/Hospital contract, the medical services would have been related to the previous Eisner care and to Eisner's grant-supported activity.

Given that FTCA coverage under § 233 requires a defendant to be a deemed entity – which Eisner unquestionably was – and the relevant medical services to have been provided by the entity or its employees to a patient of that entity – which Plaintiffs were – the question of FTCA coverage would seem to be simple.[1]  The government's contrary argument, restated in various ways, ultimately reduces to the claim that Plaintiffs were patients of only the Hospital, and not of Eisner, at the time the services were rendered.  Therefore, in the government's view, the Eisner Defendants were providing the relevant medical services on behalf of the Hospital and not as part of Eisner's community health center work.

It is undisputed that Plaintiffs had been admitted as patients of the Hospital at the time of the allegedly negligent care.  However, the government fails to substantiate its largely implicit assertion that Plaintiffs were not *also* Eisner's patients at the time.  To the degree that the government grapples with this issue, its response is either conclusory or rests on a strained, selective reading of the contract between Eisner and the Hospital.  For example:

> Eisner's contract with the Hospital creates a separate line of business for Eisner wherein Eisner's employees are treating Hospital patients, regardless of where any prior medical care may have occurred. Indeed, the contract disavows any connection to the referral of Eisner's patients to the Hospital. [Citation to § 4.2(a)]  Instead, the Hospital-based Eisner employees are treating the Hospital's OB/GYN patients, some of whom *might* have had prenatal

---

[1] Cf. Cromer v. Dignity Health, 2025 WL 1153808 (C.D. Cal. April 18, 2025) (plaintiff not previously patient of Eisner before receiving care at Hospital); Kelley v. Franklin Cnty. Rehab Cntr., 2023 WL 2529926 (D. Vermont 2023) (plaintiff not previously patient of community health center before receiving care at rehabilitation center from health center employee under analogous arrangement), afff'd Kelley v. Richford Health Cntr., Inc., 115 F.4th 132, 140 (2d Cir. 2024) (statute "ties an entity's deemed federal employment to the patient/nonpatient status of the individual receiving treatment.").

3

> care at an Eisner facility. Thus, all care under the contract, regardless of any prior treatment by Eisner, lacks the required causal connection between the care and a "patient[] of the entity" under § 233(g)(1)(B)(i), such that the care would "result from" treatment of a health center patient.

Gov't Mem. at 14 (emphasis in original).

It is apparent that the conclusion drawn in the final sentence of the above quote does not follow from the previous sentences. Even if the contract with the Hospital allows/requires Eisner to provide care to Hospital patients who are not otherwise Eisner's patients, the government fails to explain why that fact somehow "un-patients" preexisting Eisner patients when they are admitted to the Hospital for continuation of care previously received at Eisner outpatient facilities. In other words, the government fails to substantiate its (implicit) view that a patient can only be a patient of *either* the Hospital or Eisner but not both at the same time. In contrast, the "Federal Torts Claims Act Health Center Policy Manual," created and distributed by the Department of Health and Human Services, explicitly acknowledges that "[t]he provision of local inpatient hospital care to a covered entity's patients is considered part of the continuity of care of the patient and is covered by FTCA if the service provided at the local hospital is within the covered entity's scope of project and the covered individual's scope of employment." FTCA Manual at 11.

Similarly, even if the services at issue in this case partially satisfied Eisner's obligations under the contract with the Hospital, the government fails to support its largely implicit assertion that this overrides an otherwise fairly straightforward application of § 233. Simply put, the government fails to point to anything in § 233 that suggests that services otherwise covered by § 233(a) are not covered if those services also in some sense provide an ancillary benefit to a third-party.

4

The government seeks support in a related regulation, 42 C.F.R. § 6.6, but conflates different provisions of that regulation. Citing §§ 6.6(c) and (d), the government asserts, "To be sure, the Court can uphold the Attorney General's decision based solely on the fact that the Eisner Defendants were working on the Hospital's behalf." Mem. at 14. Section 6.6(c) lays out the rule that "covered individuals" have to be acting within their scope of employment. Only if the "covered individual" is "providing services which are not on behalf of the covered entity" does § 6.6(c) come into play. There is no question that the individual defendants, Drs. Khalifa and Poursharif, were acting within the scope of their employment with Eisner, whether under the federal grant or the Hospital contract. The actual question is whether *Eisner* was acting within the scope of its grant when Khalifa and Poursharif provided the services. As for that, § 6.6(d) states that "[o]nly acts and omissions related to the grant-supported activity of entities are covered,"[2] and immediately contrasts those covered acts and omissions with "[a]cts and omissions related to services provided to individuals *who are not patients of a covered entity*," which are covered only under certain exceptions determined by the Secretary of Health and Human Services. 42 C.F.R. § 6.6(d) (emphasis added). Therefore, the analysis returns to the question of whether Guzman and A.H. were patients of Eisner at the time of the acts in question. As discussed above, the Court has little trouble concluding that they were.

The government's citations to the Eisner/Hospital contract are also unpersuasive. The contract says nothing directly about whether patients admitted to the Hospital are considered Eisner patients, Hospital patients, or both. However, the contract does directly state that care under the contract would include "all labor, delivery and other services provided through the [OB/GYN] Department to [Eisner]

---

[2] The government does not contest that, absent the Hospital contract, the acts and omissions at issue in the case would relate to Eisner's grant-supported activity. In fact, as a "health center" under the statutory scheme, Eisner is *required* to provide perinatal services. See 42 U.S.C. § 254b(b)(1)(A)(i)(III)(aa).

5

patients." Contract ¶ 2.1. This shows that the parties contemplated that at least some preexisting Eisner patients would be admitted to the Hospital for "labor, delivery, [or] other services" provided by the OB/GYN department, and those patients would be treated by Eisner staff. The government points to the referral provision of the contract, ¶ 4.2, to argue that "the contract explicitly disavows any contemplation that Eisner's patients should be referred or admitted to the Hospital." Reply at 4; see also Mem. at 14. However, a plain reading of that provision shows that it is intended only to disavow any contractual expectation or requirement that Eisner would send its patients to the Hospital, as opposed to other hospitals.[3] It says nothing about continuity of care for Eisner patients who, in fact, are referred to the Hospital or otherwise find their way to the Hospital when in need of inpatient care.

### III. CONCLUSION

The Eisner Defendants have been deemed to be treated as Public Health Service employees for the purposes of 42 U.S.C. § 233, and the medical services that form the underlying basis of this case were provided to Eisner patients. Therefore, the government's motion to remand is DENIED, and the United States is substituted as the defendant in place of Defendants Ahmad Khalifa, M.D., Borzouyeh

---

[3] Cf. Cal. Health & Safety Code § 445 ("No person, firm, partnership, association or corporation, or agent or employee thereof, shall for profit refer or recommend a person to a physician, hospital, health-related facility, or dispensary for any form of medical care or treatment of any ailment or physical condition.").

Poursharif, M.D., and Eisner Pediatric & Family Medical Center, pursuant to 42 U.S.C. § 233 *et seq*.

IT IS SO ORDERED.

Date: August 27, 2025

_____
Dale S. Fischer
United States District Judge